# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **NANCY D. TURNER,** )<br>)<br>Plaintiff, )<br>)<br>**vs.** )<br>)<br>)<br>**ALABAMA AGRICULTURAL** )<br>**AND MECHANICAL** )<br>**UNIVERSITY, ET AL.,** )<br>)<br>Defendants. ) | **Civil Action Number<br>5:17-cv-2142-AKK** |

## MEMORANDUM OPINION AND ORDER

Nancy Turner filed this action against the Board of Trustees for Alabama Agricultural and Mechanical University ("AAMU"), and Dr. Jerome Williams, Chris Robinson, Kevin Ball, Dr. William E. Cox, John Hackett, Jr., Ginger Harper, Perry Jones, and Dr. Roderick D. Watts, sued solely in their official capacities as members of the Board of Trustees, as well as Dr. Andrew Hugine in his official capacity as President of AAMU. Turner asserts gender, race, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") against AAMU and race discrimination and retaliation claims under § 1981 of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981 ("§ 1981"), and 42 U.S.C. § 1983 ("§ 1983") against the individual trustees and Dr. Hugine. Defendants have now moved for summary judgment on all of Turner's claims on the following

1

grounds: (1) sovereign immunity; (2) a failure to make a prima facie case for her discrimination claims; and (3) a failure to demonstrate a causal connection and pretext for her retaliation claims. Based on the evidence and consideration of relevant law, Defendants' motion is due to be granted except as to the retaliation claims.

## I. RULE 56(D) MOTION TO DEFER

The court first turns to Turner's Rule 56(d) Motion to Defer or Deny Defendants' Motion for Summary Judgment. Doc. 46. "Under Rule 56(d), where the non-moving party to a motion for summary judgment shows 'by affidavit or declaration' that, for specified reasons, it 'cannot present facts essential to justify its opposition,' the district court may delay consideration of the motion, deny the motion, allow additional time for discovery, or issue another appropriate order." *Smedley v. Deutsche Bank Tr. Co. Americas*, 676 F. App'x 860, 861 (11th Cir. 2017) (quoting Fed. R. Civ. P. 56(d)). A Rule 56(d) motion must be supported by an affidavit "which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). To prevail, Turner must demonstrate how further discovery will enable her to "rebut the movant's showing of the absence of a genuine issue of fact," *Wallace v. Brownell Pontiac–GMC, Co.*, 703 F.2d 525, 527 (11th Cir. 1983). But, "a party

will not be entitled to conduct further discovery under Rule 56(d) where the absence of evidence essential to that party's case is the result of that party's lack of diligence in pursuing such evidence through permitted methods of discovery." *Cordero v. Readiness Mgmt. Support, L.C.*, No. 6:11-CV-1692-ORL-19, 2012 WL 3744513, at *3 (M.D. Fla. Aug. 29, 2012) (citing *Barfield v. Brierton*, 883 F.2d 923, 932 (11th Cir. 1989)).  Finally, "whether to grant or deny a [Rule 56(d)] motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Harbert Int'l, Inc.*, 157 F.3d at 1280.

In support of her motion, Turner contends AAMU failed to produce documents and provide a Rule 30(b)(6) witness to testify about crucial facts she needs to oppose the summary judgment motion, including, as to her retaliation claim, evidence related to when Defendants received notice of the charge she filed with the Equal Employment Opportunity Commission ("EEOC").  Doc. 46 at 5, 17, 24. Turner's contentions are unavailing. To begin, the court provided more than sufficient time for discovery, including granting multiple extensions.  In particular, Defendants submitted two motions for extensions to the discovery and dispositive motions deadlines, docs. 24 and 27, and Turner also filed two motions for discovery extensions, docs. 31 and 38.  The court partially granted three of these motions, docs. 25, 28, and 34, resulting in a total discovery period of over twelve months, *see* docs.

17 and 34.  And since Turner included the retaliation claim in her original complaint, doc. 1 at 10-11, this meant Turner had at least seventeen months prior to the final discovery deadline to gather the facts necessary to ascertain when the Defendants received notice of her protected activity.  Put simply, Turner had "ample time and opportunity for discovery" but "failed to diligently pursue [her] options." *Barfield*, 883 F.2d at 932.

To the extent that Turner believed that Defendants' actions impeded her effort to conduct discovery, she had the ability to seek the court's intervention but failed to do so. *See* doc. 17 at 17-19. "[T]he pertinent inquiry is not whether the entire discovery period has been completed, but merely whether the parties have had an adequate opportunity for discovery." *Vision Bank v. Merritt,* No. CIV.A. 10-0301-W, 2010 WL 5474161, at *2, n.3 (S.D. Ala. Dec. 8, 2010) (citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990).  In light of the extended discovery period, Turner has failed to satisfy her burden under Rule 56(d), and her motion to defer is due to be denied.[1] *See Fla. Power,* 893 F.3d at 1316 (affirming the district court's denial of a Rule 56(d) motion where the parties agreed on a discovery schedule which the trial court extended several times); *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001) (noting

---

[1] Counsel for Turner's declaration played no role in the court's analysis on the motion to defer or on the motion for summary judgment. Therefore, Defendants motion to strike the declaration and reply brief is moot.

that "district courts [have] broad discretion over the management of pre-trial activities, including discovery and scheduling").

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*,

477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

### III. FACTUAL BACKGROUND

Turner, an African American woman, began working as a police officer in AAMU's Department of Public Safety ("DPS") in July 2006. AMMU discharged Turner without cause in 2009 and then rehired her in 2011. AAMU subsequently promoted Turner to sergeant in 2013. Docs. 45-1 at 9; 49-1 at 1. Turner held the position until her discharge in 2016.

The events that led to the discharge trace their genesis to October 2015, when DPS dispatched officer Lorenza Bodie to a dormitory to respond to a report

concerning a female student with difficulty breathing as a result of a "marijuana-laced brownie." Doc. 49-1 at 1-2. Bodie informed Turner, who arrived at the scene later, that the female victim mentioned a male student's name as the person who gave her the brownie. *Id.* Bodie later identified the male student and listed him on his incident report. *Id.* The following day, Turner took Bodie's report to the Madison County Magistrate's Office and obtained a warrant for the male student's arrest. Doc. 45-1 at 65. For reasons unclear to the court, DPS took no action for six months. Then, DPS Captain Amard Martin and officer Jean Joseph executed the warrant by arresting the student in class in front of his fellow students, handcuffing him, and walking him across campus to the DPS office. Doc. 45-4 at 97. A few weeks later, AAMU Vice President of Student Affairs, Dr. Gary Crosby, discovered that DPS had arrested the wrong student, and the criminal charges were dismissed. Doc. 45-4 at 23-25. Shortly thereafter, the student filed a lawsuit against AAMU, which the parties ultimately settled. Docs. 45-1 at 70-71; 45-4 at 130.

A few months later, Turner filed three internal complaints against Brian Ruble, a DPS investigator, for creating a hostile work environment. *See* docs. 49-1 at 12-15. Turner reported that Ruble interrogated her about accessing certain areas of the workplace, strongly implied that she lied, threatened to record her conversation, and personally intimidated her. *See* doc. 45-5 at 124-129. Shortly thereafter, AAMU Human Resource Director Cassandra Tarver-Ross met with

Turner to discuss her complaints and concluded ultimately that Ruble's allegedly "rude and unprofessional way" failed to rise to a hostile work environment. Doc. 45-2 at 9-11, 122.

Prior to Turner's meeting with Tarver-Ross, DPS promoted Ruble to Captain of Administration. That same day, July 20, 2016, Turner filed an EEOC charge alleging race and sex discrimination, contending that DPS promoted Ruble to an unadvertised position and that Ruble allegedly had less experience than her,[2] failed to get along with colleagues, and created a hostile work environment. Docs. 49-1 at 16; 45-4 at 190, 45-5 at 34. Just two months later, DPS Chief Malone recommended to Dr. Crosby and Dr. Daniel Wims, Senior Personnel Officer, that AAMU discharge Turner without cause, *id.* at 132, which AAMU accepted. Shortly after receiving notice of her discharge, Turner filed another EEOC charge alleging retaliation, doc. 45-4 at 191, and subsequently filed this lawsuit, doc. 20.

## IV. ANALYSIS

Defendants raise two primary arguments in support of their motion: (1) that they are entitled to sovereign immunity for the §§ 1981 and 1983 claims and (2) that Turner cannot make a prima facie case for sex and race discrimination and retaliation. Doc. 41. The court reviews each contention separately below.

---

[2] DPS hired Ruble, a white man, in 2011 as a police officer and subsequently promoted him to investigator in October 2012. Doc. 45-2 at 6-7. Ruble resigned in 2015 for another job but returned to DPS two months later. *Id.*

## A. Eleventh Amendment Immunity

### i. Board of Trustees

"'The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity.'" *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995) (quoting *Lassiter v. Ala. A & M Univ., Bd. of Trs.,* 3 F.3d 1482, 1485 (11th Cir. 1993) *rev'd on other grounds* 28 F.3d 1146 (11th Cir. 1994)). Alabama has not waived its immunity, *Alabama A & M University v. Jones*, 895 So. 2d 867, 873 (Ala. 2004), and § 1983 does not represent an abrogation of the Eleventh Amendment, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Thus, the Defendants are entitled to "Eleventh Amendment immunity" if they show that they were "acting as . . . 'arm[s] of the State,' which includes [the State's] agents and instrumentalities." *Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir. 2003). Significantly, "[t]his jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984). In other words, the state, along with its agents and instrumentalities, is immune from suit regardless of whether the plaintiff is seeking legal or equitable relief. *See id.*

However, *Ex parte Young*, 209 U.S. 123 (1908), provides a narrow exception to this general rule when a "suit alleg[es] a violation of the federal constitution

against a state official in [her] official capacity for injunctive relief on a prospective basis." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). To determine whether a suit falls within the *Ex parte Young* exception for prospective relief, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)). But, the *Ex parte Young* exception does not allow a plaintiff "to adjudicate the legality of past conduct." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). Therefore, "*Ex parte Young* requires the allegation of an ongoing and continuous violation of federal law." *Id.* at 1338. Moreover, *Ex parte Young* cannot "operate as an exception to . . . sovereign immunity where no defendant has any connection to the enforcement of the challenged law at issue." *Id.* at 1341. Thus, before the exception applies, the "state officer [named as a defendant in her official capacity must have] the authority to enforce an unconstitutional act in the name of the state." *Id.*

Relevant here, the parties concede that the Board, as an entity, and its individual members possess no authority over employment decisions. Docs. 50 at

24; 42 at 24-26 (citing Ala. Code § 16-49-23 (1975)).[3]  Consistent with Turner's admission that only Dr. Hugine possesses the authority over her reinstatement, Turner consents to the dismissal of her §§ 1981 and 1983 claims against the Board and its individual members.  Doc. 50 at 24.  Accordingly, the court will consider below whether Dr. Hugine has immunity against these claims.

### ii. Dr. Hugine

With respect to her §§ 1981 and 1983 claims, Turner seeks reinstatement, a promotion to captain, and litigation costs.  Doc. 20 at 13-15.  Dr. Hugine contends that he is also entitled to sovereign immunity because Turner's request for a promotion falls outside of prospective, injunctive relief since Turner "cannot force [Dr. Hugine] to perform a discretionary act" and reinstatement is barred as a "retroactive award which requires the payment of funds from the state treasury." Doc. 42 at 23-24, 30-32 (citing *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) and *Seminole Tribe of Fla. v. State of Fla.,* 11 F.3d 1016, 1028 (11th Cir. 1994), *aff'd sub nom.* 517 U.S. 44 (1996)).  The court disagrees with Dr. Hugine and joins other district courts in finding that a promotion constitutes prospective, injunctive relief.[4]

---

[3] "The board shall not engage in activity that interferes with the day-to-day operation of the university. The primary responsibility of the board of trustees is to set policy for the university and prescribe rates of tuition and fees. The board also has the power to organize the university by appointing a president, whose salary shall be fixed by the board." Ala. Code § 16-49-23 (1975).

[4] *See Boglin v. Bd. of Trustees of Alabama Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1264 (N.D. Ala. 2018) (finding that "Plaintiff may only pursue these claims against the individual defendants in their official capacities to the extent that she seeks prospective injunctive relief in

Also, Turner's request for reinstatement "is not barred by the Eleventh Amendment." *See Lassiter,* 28 F.3d at 1152 n. 9. Accordingly, Dr. Hugine is not entitled to sovereign immunity for the §§ 1981 and 1983 race discrimination and retaliation claims.

### B. Turner's Race and Sex Discrimination Claims – Counts I, II, and IV

Turner asserts gender and race discrimination claims under Title VII against AAMU (Counts I and II) and a race discrimination claim under §§ 1981 and 1983 against Dr. Hugine (Count IV). "Where, as here, [Turner] predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical . . . [and the court] need not discuss [Turner's] Title VII claims separately from [her] section 1981 and section 1983 claims." *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir. 1985). Therefore, because Turner is attempting to prove intentional discrimination through circumstantial evidence, the court utilizes the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting method of proof.  Under this method, Turner

---

the form of reinstatement or a promotion"); *Bennett v. Georgia, Dep't of Pub. Safety,* No. 1:07-CV-2828-JEC-CCH, 2009 WL 10697509, at *6 (N.D. Ga. June 15, 2009), *report and recommendation adopted*, No. 1:07-CV-2828-JEC, 2010 WL 11595156 (N.D. Ga. Feb. 16, 2010) ("Plaintiff is seeking prospective injunctive relief in the form of reinstatement to her employment and a promotion . . . Accordingly, Plaintiff may proceed on her Section 1983 claim against the Individual Defendants in their official capacities."); *Thomas v. Washington Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 88 (D.D.C. 2018) ("Thomas's complaint alleges an ongoing violation of the ADEA and seeks prospective relief, namely the promotion for which he was rejected, which is sufficient to state a claim against the Individual Defendants.").

bears the burden of establishing a *prima facie* case of sex and race discrimination. *See Walker v. Mortham*, 158 F.3d 1177, 1183 (11th Cir. 1998). If Turner satisfies her initial burden, the Defendants must then show a legitimate, non-discriminatory reason for its employment action. *See id.* at 1184. If Defendants do so, the burden shifts back to Turner to prove that the proffered reason is a pretext for unlawful discrimination. *See Mulhall v. Advance Sec.*, 19 F.3d 586, 597 (11th Cir. 1994). However, "[t]he ultimate burden of persuading the trier of fact that [AAMU and Dr. Hugine] intentionally discriminated against [Turner] remains at all times with [Turner]." *See Springer v. Convergys Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

### i. Prima Facie Case

To establish a prima facie case, Turner must show: "(1) she is a member of a protected class under Title VII; (2) she was qualified for the employment position in question; (3) she applied for the employment position in question and was rejected; and (4) the employment position remained open or was filled by a person outside the protected class to which the plaintiff belongs." *Walker,* 158 F.3d at 1180, n.2. There is no dispute that Turner is a member of a protected class and that she lost the position at issue to a person outside her protected class, i.e. Ruble, a white man. Rather, the crux of the parties' dispute rests on whether Turner applied for the position and whether she was qualified for the position.

## a. Whether Turner applied for the position

"[W]hen there is no formal notice of the job's availability,[5] the plaintiff may have no means, within [her] own knowledge, of showing whether the employer considered [her] or not." *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 533 (11th Cir. 1992). In such a case, a plaintiff can make out a prima facie case as "long as [s]he establishes that the [employer] had *some reason or duty to consider* [her] for the post." *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984) (emphasis added). Indeed, "[t]he employer cannot avoid a Title VII violation by showing that it incorrectly assumed that the plaintiff was uninterested in the job." *Id.* Relevant here, Dr. Crosby concedes that he asked Chief Malone "to consider *supervisors* in public safety" for the new captain position awarded to Ruble. Docs. 41-4 at 103; 45-4 at 29 (emphasis added). Therefore, Chief Malone could have considered Turner, a supervisor at the time, for the position. Doc. 49-1 at 1. As such, contrary to Defendants' contention, Turner is not required to demonstrate this prong of a prima facie case.

---

[5] Defendants contend that Turner cannot satisfy this prong because no vacancy existed for this position, i.e. that DPS "promoted [Ruble] through an internal process," that DPS did not "seek applicants or interview applicants," and that the position was "essentially created . . . for Ruble" and to "compensate Ruble for [taking on] additional duties." Doc. 41 at 29. The Defendants note that § 3.2 of the AAMU handbook states that "position vacancies are posted at the request of a department" and that certain positions are not announced "in special or exceptional circumstances." Doc. 45-6 at 38. With respect to promotions, § 4.2.4 of the handbook states that if "an employee's job performance is rated in the top two ranking on his or her most recent performance appraisal or if the employee has seniority, the supervisor may determine that in the best interest of the University, the employee may be promoted." Doc. 45-6 at 32.

*b. Whether Turner was qualified for the position*

"[A]lthough [Turner] need not show that [she] applied for the [captain] post, [she] must show that [she] was qualified for the position in order to make out a prima facie case of discrimination." *Jones,* 977 F.2d at 533. Turner may establish this prong if she shows that Ruble only "was *equally* as well qualified" and "need not show . . . that [her] qualifications exceeded those of a nonminority employee." *Hill v. Seaboard Coast Line R. Co.,* 885 F.2d 804, 809–10 (11th Cir. 1989). "[T]o demonstrate that he was qualified for the position, a Title VII plaintiff need only show that he or she satisfied an employer's *objective qualifications . . .*" *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005). As the Eleventh Circuit has stated, "the prima facie case is designed to include only evidence that is objectively verifiable and either easily obtainable or within the plaintiff's possession." *Id.*

Citing budget cuts and morale issues during the summer of 2016 at DPS, Dr. Crosby recommended the creation of the Captain of Administration position. Doc. 45-3 at 4. After asking Chief Malone to consider supervisors, and based on Chief Malone's recommendations, Dr. Crosby promoted Ruble due to Ruble's "experience, credentials, and performance." *Id.* at 5-6. To demonstrate that she was qualified for the position,[6] Turner argues only that she was a "supervisor in DPS."

---

[6] The "essential duties and responsibilities" include:

Doc. 50 at 26 (citing 45-4 at 29). But not all supervisors have the same experience level or qualifications. And, unlike the interim position in *Vessels*, a "formal list of qualifications for the [captain of administration] position" at AAMU DPS existed and the minimum position requirements are more than just "subjective criteria." *See* 408 F.3d at 769. Because Turner relies solely on her status as a supervisor and puts forth no other evidence of her qualifications for the position and does not show that she has "at least five years [of experience] in a supervisory or management position" in law enforcement, as the position required, doc. 45-4 at 84, Turner has failed to establish that she meets the requisite minimum requirements. In fact, based on the record, Turner received a promotion to "sergeant" in October 2012 which made her "a supervisor in DPS." Docs. 49-1 at 1; 45-4 at 184-185. This meant that at the time of the promotion at issue, Turner had only accumulated a little less than four years

---

plans, assigns, supervises, and participates in the programs and activities of administrative operations including but not limited to the administration of records, training, dispatch, inventory, and equipment, the patrol and investigative operations; develops staffing plans, studies crime and other reports to determine trends, and makes recommendations for changes in the organization and operating procedures to obtain the most effective results, prepares or directs the preparation and maintenance of necessary records and reports, performs related work as required.

Doc. 45-5 at 84. Moreover, the position's minimum requirements include Alabama Peace Office Standards and Training ("APOST") certifications, high school graduation with completion of some college work, and ten years of experience in law enforcement with at least five (5) in a supervisory or management position. *Id.*

of supervisory experience in law enforcement.[7]  Doc. 45-5 at 84; Doc. 49-1 at 2-3.

Therefore, "[a]lthough [Turner] believes that [s]he was qualified, that opinion, without more, is not sufficient to establish [her] qualifications for [her] prima facie case." *Bullington v. Jefferson S. Corp*., No. 4:16-CV-0245-HLM-WEJ, 2017 WL 6598148, at *14 (N.D. Ga. Nov. 13, 2017).

Put simply, "[Turner] has failed to establish a prima facie case of discrimination under *McDonnell Douglas*, or to produce any other circumstantial evidence of discrimination" *Banks v. iGov Techs., Inc.,* 661 F. App'x 638, 644 (11th Cir. 2016).  And, because a "failure to establish a prima facie case warrants summary judgment," *Pace v. S. Ry. Sys.,* 701 F.2d 1383 (11th Cir. 1983), the Defendants' motion is due to be granted on the Title VII and §§ 1981 and 1983 discrimination claims.

### C. Turner's Retaliation Claim – Counts III and V

Turner pleads a retaliation claim under Title VII against AAMU (Count III) and under §§ 1981 and 1983 against Dr. Hugine (Count V). Title VII and § 1981

---

[7] Between Turner's initial discharge from AAMU DPS in August 2009 and until her return in April 2011, Turner worked as a detention officer at the Madison County Sheriff's Department and security officer at Dothan Security.  Doc. 45-1 at 13-14.  Turner concedes that she did not have a "supervisory role" in these positions. *Id.* In contrast, Ruble had more than five years of supervisory experience in law enforcement, including his time as a Deputy Sheriff at the Limestone County Sheriff's office, where he "supervis[ed] daily patrol shifts" for seven years, and as an investigator at AAMU, where he "supervised staff and shift operations as needed" for several years.  Doc. 45-4 at 181-183.

prohibit employers from retaliating against employees who oppose an unlawful employment practice. *See Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d 1261, 1277 (11th Cir. 2008). Where, as here, the evidence of retaliation is entirely circumstantial, the burden of proof shifts between Turner and Defendants according to the *McDonnell Douglas* analytical framework. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). Initially, Turner must show: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that the adverse employment action would not have occurred but for the protected activity. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). If Turner establishes a *prima facie* case, the burden shifts to Defendants to "proffer a legitimate, non-discriminatory reason for the adverse employment action," but this burden is "exceedingly light." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1495 (11th Cir. 1989)). If Defendants meet their burden, "the burden shifts back to [Turner] to produce evidence that the [Defendants'] proffered reasons are a pretext for discrimination." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

### i. Prima Facie Case

Defendants do not dispute that Turner engaged in statutorily protected expression by filing three internal complaints and an EEOC charge, doc. 49-1 at 12-

16, and suffered an adverse action through her discharge, doc. 45-2 at 133. The crux of the dispute here hinges on whether Turner can satisfy the casual relation prong of the *prima facie* case. This prong requires Turner to prove that but-for the Defendants' desire to retaliate, she would not have suffered the adverse employment actions. *Booth v. Pasco Cnty.,* 757 F.3d 1198, 1207 (11th Cir. 2014) (citing *Univ. of Texas Sw. Med. Ctr.*, 570 U.S. at 363). Turner can prove causation through "sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse . . . action." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (citation omitted).

Turner has made this showing. Specifically, Human Resource Director Tarver-Ross received at least two of Turner's internal complaints about Ruble in July 2016 and then met with Turner to discuss workplace issues. Docs. 45-2 at 8-10. Thereafter, in early September 2016, Tarver-Ross met with Chief Malone to discuss the procedure for a no-cause termination, and Tarver-Ross received Dr. Crosby's recommendation for Turner's termination a week later. *Id.* at 10. Despite these events, Defendants maintain that the causal link does not exist because Dr. Crosby had no knowledge of Turner's workplace complaints and EEOC charge prior to making the decision to discharge Turner. This contention is unavailing at this juncture of the case because Dr. Crosby concedes that he was aware of Turner's July

1, 2016 memo to Captain Martin regarding her complaints of a hostile work environment. *See* doc. 45-4 at 40-41, 123-124. And, Turner contends that it is plausible that Dr. Crosby received Turner's EEOC charge prior to making the discharge decision since Dr. Crosby admitted to providing AAMU's counsel with "information that Dr. Crosby had regarding the [mistaken student arrest case]" as part of the university's response to the EEOC charge. Doc. 45-4 at 52-53. In light of the conflicting evidence regarding whether Dr. Crosby had the requisite knowledge of Turner's EEOC charge prior to her termination, Turner has at least demonstrated that a genuine dispute of material fact exists as to this issue. Moreover, because Dr. Crosby knew about Turner's internal complaint prior to discharging her, Turner has sufficiently created a presumption of causation to establish a prima facie case.[8]

### ii. Whether the Defendants Offers Legitimate Non-Discriminatory Reasons and Turner Demonstrates Pretext

"Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Bryant*

---

[8] *See Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) ("The short period of time [(one month)] between the [protected activity] and the [adverse employment action] belies any assertion by the defendant that the plaintiff failed to prove causation."); *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 702 (11th Cir. 1998) (finding five weeks established temporal proximity).

*v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). Defendants assert that they discharged Turner without cause due "solely to [Turner's] lack of fitness as a campus police officer, which was evident in her conduct that led to the wrongful arrest of a student" and "Dr. Crosby's desire to protect students and the University from similar future errors." Doc. 41 (citing doc. 45-3 at 9). Therefore, the burden shifts to Turner to show pretext. *Alvarez*, 610 F.3d. at 1264.

Turner maintains that Defendants have provided shifting reasons for her termination, ranging from her involvement in arresting an innocent student in the classroom to violating unwritten rules about conducting further investigations prior to student arrests. Doc. 50 at 35-38. In support of her contention, Turner cites to the close temporal proximity between her complaint to Tarver-Ross and her discharge. And Turner notes that while Defendants cite to her involvement in the arrest of the student in a classroom, she obtained the warrant in October 2015, that the two officers arrested the student in February 2016, and yet Defendants only discharged her shortly after she filed her EEOC charge seven months later. Doc. 50 at 36-38. Turner notes also that Defendants did not discharge the two officers who arrested the student, doc. 41-4 at 173, a fact Dr. Crosby and former DPS Director Monica Ray confirmed, *see* doc. 45-4 at 20-22 (Dr. Crosby's deposition confirming that the investigator Dennis Gardner who interviewed the victim received only a verbal admonishment) and 49-2 at 3-5 (Ray's declaration that she did not

recommend discharging the two officers).  Because "the anti-retaliation provision prohibits employers from taking only those actions that could dissuade a reasonable worker from making or supporting a charge of discrimination," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), the disparity in punishment among DPS officers involved in the mistaken arrest and the seven-month delay in waiting to discharge Turner could allow a jury to reasonably infer pretext.  *See Anderson v. City of Fort Pierce*, 2015 WL 10857439, at *4 (S.D. Fla. July 29, 2015) (internal marks omitted) ("a convincing mosaic . . . of circumstantial evidence may include suspicious timing").

Similarly, Turner has also sufficiently rebutted Dr. Crosby's contention that Turner purportedly violated a well-known policy to keep students out of the criminal justice system.  Specifically, Turner and former DPS Director Ray testified that there is no provision in the DPS policy that requires additional investigation prior to arresting a student and that Turner has arrested other students after securing a warrant without further investigation or interviews with the student suspect.  Docs. 50 at 37; 49-1 at 8; 49-2 at 5.  And Dr. Crosby also testified that he was not aware of any policy requiring officers to conduct further investigations prior to a student's arrest.  *See* doc. 45-4 at 22 ("Q: Prior to the [wrongful arrest] matter, was there any requirement that a subject be interviewed prior to arrest?  A: To my knowledge, no."); doc. 45-5 at 19 (Dr. Crosby testimony that he did not "ask anybody else about

whether it was standard practice for an officer to request a warrant without an investigation" and that he did not have "any knowledge, training, or experience that would let [him] know whether that's a standard practice"). Because "[a]n employer's failure to follow its own internal employment procedures can constitute evidence of pretext," *see Hurlbert v. St. Mary's Health Care System, Inc.,* 439 F.3d 1286, 1299 (11th Cir. 2006) (internal citation omitted), Turner has put forth sufficient evidence to allow a "reasonable jury to infer that unlawful discrimination was the real reason." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1279 (11th Cir. 2008).

Finally, Turner has also pointed out inconsistencies in AAMU's decision-making process—i.e. Defendants claimed initially that Chief Malone had no involvement in the discharge, but then Dr. Crosby later testified that Chief Malone in fact recommended the termination of Turner. Docs. 50 at 42-43; 45-4 at 49-50. "[A]n employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext." *Hurlbert,* 439 F.3d at 1298–99.

To close, in light of Turner's demonstration of "weaknesses or implausibility in the [Defendants'] proffered legitimate reason," *Rioux,* 520 F.3d at 1279, a reasonable factfinder could ultimately conclude that Defendants' proffered reasons were "unworthy of credence." *See Furcron*, 843 F.3d at 1313. Therefore, Defendants' motion on Turner's retaliation claim fails.

## V. CONCLUSION AND ORDER

Consistent with this opinion, Turner's motion to defer, doc. 46, is **DENIED** and Defendants' motion to strike, doc. 52, is **MOOT**. Defendants' motion for summary judgment, doc. 41, is **GRANTED** solely as to Turner's discrimination claims (Counts I, II, and IV) and the §§ 1981 and 1983 claims asserted against the Board of Trustees and its individual members. Accordingly, the discrimination claims and the §§ 1981 and 1983 claims against the Board of Trustees and its individual members are **DISMISSED WITH PREJUDICE**.

The pretrial conference will now proceed at **1:30 p.m.** on **September 18, 2019** in **Huntsville, Alabama** and the trial will proceed, as scheduled, on **October 28, 2019**, in **Decatur, Alabama** on Turner's remaining retaliation claims (Counts III and V) pursuant to Title VII against AAMU and §§ 1981 and 1983 against Dr. Hugine. The court directs the parties to the Standard Pretrial Procedures governing all pretrial deadlines, which is attached as Exhibit A.

**DONE** the 6th day of September, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE